On behalf of the athlete, Mr. Chris Kelley May it please the court, we are here because of the trial court's interpretation of its mandate under the Illinois Domestic Violence Act to conduct hearings on plenary orders pursuant to the acts as expedited. We make three claims. First, that the trial court abused its discretion in denying Mr. Kerans a continuance a mere one week after service of summons, citing the need to expedite the matter. This forced Mr. Kerans to go to trial and the trial court did call it a trial without counsel without preparation. Second, in compelling Mr. Kerans to defend himself at a trial at his first appearance in court, the trial court conducted the proceedings in a streamlined fashion which narrowed the issues, but which was contrary to the requirements of the act. Third, the product of that haste, a two-year order of protection was against the manifest evidence presented at that trial as that evidence was insufficient to make a finding of harassment under the act. I would take the issue in chronological order. I think the first question would be the right to a continuance. You know, generally speaking, you can make the argument a party has a right to a continuance, but the question is, does in fact a party have an absolute right to a continuance or is that something left to the sound discretion of the trial court? Well, it is left to the sound discretion of the trial court, but there's two issues here. One is that this was a hearing that was held one week after service of the summons. It was his first time up. Now, normally, in some cases, I would think that that may be enough if he's ready to proceed. Mr. Kerans requested numerous times to have an attorney present. That may or may not be something which the court in its discretion denies. However, he also requested to issue a subpoena for a document that would have been useful to the court in an issue which it ultimately used to decide it. That is a police report on an incident which some pushing, kicking, and shoving occurred, and there was never any testimonies to who initiated the violence. With regard to the right to counsel and bearing in the sound discretion, I think one of the things that was interesting in reading the facts is apparently during the lunch break after his request for counsel was denied, he was able to ostensibly find an attorney. Yes. So could the trial court not wonder what happened between the week of service? If he could have retained an attorney over the lunch hour, why couldn't he have made an effort to retain an attorney the week before the hearing? Well, that actually goes on the second point I was going to make, Your Honor, and that is under this Act, the Domestic Violence Act, Section 210, was actually kind of defines the word expedited for this matter as far as Mr. Kearns. That is to say that Section 210 instructs that the summons inform the respondent that he has one week, seven days to either answer or appear. Now, Mr. Kearns did that. The document that was attached also said there was going to be a plenary hearing held. Now, I'm not sure that most people would know what a plenary hearing held, but what he saw was that his obligation was to answer or appear. He did that and found himself going forward to try it. Whatever discretion the judge has, there is a case that we cite, it's in a footnote, it's Williams v. Rhodes, where a respondent decides to go forward on that seventh day. He doesn't make a request for an attorney. I don't think that's a problem. But in Mr. Kearns' case where he actually had several legal reasons why he needed a continuance and was not really given, I think, fair notice that he was going to try that day. Let's explore that a little bit in the context of the actual facts of the case. And that bears in on the issue also of prejudice, which I think we need to look at. It appeared that one of the contested issues was going to be the issue of visitation, which has been removed. So he's there and reviewing the colloquy between him and the trial court. The court is asking him, essentially, do you dispute this issue, do you dispute that issue? And at worst you characterize it as acquiescence to what the trial court had asked him. So where's the prejudice? Didn't you argue that the defendant agreed, essentially, with what the court was asking him? Well, we're arguing that there wasn't any meaningful agreement. He never really answered yes or no. But at least on one issue, it's really clear that he really disagreed with it. And the court went forward anyway and completely ignored it. And if you look very carefully at the transcript on the issue of personal property, Ms. Moy says, he's got a TV at my house. Mr. Kern says, no, I've got other things too. And the judge later on tells her not to discuss the issue of personal property. So that, you know, at least on that issue, even though he never really answers yes or no to anything, and I would suggest that if you look at the answers he did give, like, you know, will you abuse and harass? And he's, I wouldn't do that anyway. And what do you mean by that? Well, I think that's civil. That's, you know, we make, I think, a point in the reply brief that these are kind of intimidating questions to somebody who's not familiar with the court process. You're asking somebody in front of a judge, do you agree not to harass or abuse somebody? And, you know, they don't want to appear as if they would even contemplate that. So they're going to answer in some, you know, kind of nondescript way, which is how he answered. I don't think, he didn't understand. At the point that the judge was asking these questions was prior to a trial. Mr. Kerns was still at the point where he, I don't think, was even contemplating that he was going to have to defend himself at a trial under the rules of civil procedure. And, you know, he ends up. What did your client think he was there for? He was going to get a continuance. He knew he was supposed to answer and appear, had a date to come. That doesn't make it sound like you're going to defend yourself at a trial. And he was also there to get a subpoena at the very least. There was a complaining witness, the person that called the police and that was somebody that may have been tracked down. There's things not in the record regarding that. The attorney that he contacted was Mr. Seinfeld, who was one of the. After you got this attorney, did the attorney go in and ask any kind of a reconsideration motion or anything like that? No. It seemed to us from looking at the transcript that we got that there was basically appeal issues here and that going back before the judge for reconsideration was not going to be effective because we felt that his methodology of adjudicating this matter was contrary to statute anyway and that it wouldn't. How was it contrary to statute? Well, this 214C requires that in granting a remedy that the court consider evidence that is for its frequency and severity and its pattern and its consequences. And the wording is quite strong. The legislature requires, it says shall, the trial court shall consider these matters. By asking for these remedies when Mr. Kearns didn't know what was going on or any litigant, and then proceeding to ignore the evidence on those matters, we're not discussing pattern, frequency, or severity and, in addition, compounding matter. It seems to me that those issues, pattern, severity, and frequency, go really to the length of the order of protection that's imposed. And in this case, the only thing the judge did to decide the length of this order is to just ask Ms. Moy, do you want two years? And this was done prior to any testimony being taken. And we don't feel like that was any way to be decided in these cases. I guess what we're trying to weigh is the testimony in the record. And I can see what you're saying, Mark. This was a situation where in some of these cases the petitioner says there's an argument, the respondent says something else, and it's not really clear. But here, there's an allegation and apparently some ostensible evidence to support bombarding the petitioner with text messages, e-mails, phone calls, flowers. I mean, isn't that something that can be objectively determined? You're not strictly relying on testimony of one party or the other? I mean, was he disputing that he did any of these things? I mean, just going back to the case I mentioned, it's really in a footnote, but it's got something in there, which was the Williams v. Rhodes case. Interestingly enough, Mr. Rhodes decided to go forward without an attorney. He said he didn't understand the process. And that aside, the trial court then questioned him as to whether he agreed with the facts in the complaint, which is entirely different than what this judge did here. This judge here asked him if he acceded to certain remedies. And the way the remedies are worded about harassment and abuse, and do you intend to take a child out of state, are things which I think are just going to catch a lot of people in a misunderstanding. And again, we have a situation where the legislature said that this court has got to consider this evidence to tailor this order of protection to the facts as it comes out. Understanding that even though these processes are expedited, they deal with orders of protection, deal with family units, trying to keep them together in some cases, trying to protect the protected persons. But they deal with the hardest issues of divorce cases, custody, visitation. And they can often segue into certain Fifth Amendment rights. There are gun rights that may affect somebody's livelihood. I mean, these are important matters. And it's because of that, and maybe this legislature instructs the courts to use, with the exception of jury trials, the full civil procedure. That is to say, discovery and such like that. I don't disagree with you, but maybe we're dealing with this on two different levels. Part of what you seem to be saying is that there's statutory considerations, there's policy considerations that may make what the trial court did here a little bit improper, you seem to be suggesting. But then trying to put it in the context of what happened in this specific case, however, there's case law that says the appellate court can affirm the trial court at any basis appearing in the record, even if you will, as you read the trial court's methodology might have been flawed. So what I'm saying here is I believe the petitioner testified to all of these things. Let's assume the court tried to get the defendant to agree with the remedies. Was there not evidence in the record, however, I need to ask this very bluntly, to support these remedies? Well, again, I'm going to point to three things. You're on first. The two-year imposition of an order of protection. There wasn't any evidence or any testimony that went to how long this should go. Second... Okay, but does he cite that based on what he perceives to be the level of harassment? He asked this question long before he started asking questions at all. It's on, I believe, page 60 of the record. It's within the first three or four pages. Okay, so you have a flawed methodology. If you want to treat an order of protection, that's fine. You have a flawed methodology, but is there evidence to support the order of protection? Forgetting about the years, is there some evidence to support the order of protection? The trial court cited three things in granting the order of protection. One was a kicking and punching episode that happened on August 23rd. A week later, within the next week, I should say, there was a phone message that said, hey, rough day, hon, we'll talk about it later. And then finally there were roses and a note left on her garage. Now, these people have a child together, at least Mr. Kerns thought so. That's a rather significant issue. There was never any paternity established. Exactly. And, of course, he's going to court not knowing that, but he'd been visiting, and there's plenty of testimony. And also there's an attempt to pay child support, and there was child support paid for the child. I mean, they did have, and that, I think, will be worn out later, but that's why the visitation issue is not part of this appeal. But for the respondent's point of mind at that time, it certainly does. Harassment is what this court found, and harassment has got to be for an improper purpose, and it's got to be intentional as to knowing that the behavior is going to disturb the other person. So barring her with text messages, e-mails, phone messages, leaving flowers is not going to be what she tells him no is going to be? I'm going to disagree a bit with the characterization. First, the trial court did not accept the text messages. He did accept them as evidence, okay? But the only characterization in the record was of her. When she handed them to the judge, she said, I know these look nice, but it's his way of harassing me. Okay, they have a child together. Again, he's trying to contact her. The roses and the message on the phone are attempts to reconcile with the mother of his child so he can see his child. That was his statement. That's another, like, quantum leap you made there. He's calling her and leaves a message, we're going to reconcile so we can reconcile. That's not what he said. What it says is, bad day, huh? Maybe we can talk about it later. And the roses had, I mean, the judge mentions a note, and the note contains something of what you say there. But again, Mr. Kearns didn't testify. Well, wasn't there this issue, take it to another level, of an altercation, allegedly, that arose from the respondent ignoring the petitioner's fairly stated instructions and not to try to reconcile? Or embrace her? And is there a dispute that this escalated into some kind of an altercation? I would suggest that if you look at her testimony closely, it really conflicts. Okay. Is he disputing the altercation? Okay. She wrote on the complaint that I pushed him, he punched and kicked me. Later on, in giving testimony before the judge, she doesn't say, she says, we punched and kicked each other. Didn't say who started it. Again, Mr. Kearns hadn't testified about this at all. What about if she simply wants to be left alone? Doesn't she have the right to just be left alone if she wants to? Well, we have the issue that they have a trial together and they do need to have contact. Again, Mr. Kearns didn't testify. The issue as to whether he should have been forced to go to trial is central to this, I think, because had there been, he'd have been able to rebut some of his testimony had he had an attorney. I would suggest that if you look at the answers that he gave during the preliminary questions, you see a man that has absolutely no idea what is going on. He speaks English, no problem, but is it all there? I think he doesn't have a complete comprehension of what's happening. He certainly doesn't understand that the judge is not going to discuss these issues later, and he doesn't have any idea that what the judge wants to do is limit his ability to, say, for instance, his child, to go near his child, the stay-away order especially. Okay, you'll have time for rebuttal. Thank you very much. May it please the court, counsel. This is a very weak record that the appellate brings before the court. On page 11 of her brief in footnote 4, she says, Kearns has not formally acknowledged paternity nor litigated the matter in the court. If, in fact, Kearns had done that, he would have a stronger record on appeal. But all that the court did was separate parties who could not get along. It's undisputed that they got into a fiscal altercation at a jewel parking lot on August 23rd of the year preceding the hearing on the order of protection. The court was well within its rights to grant to the appellee an order of protection keeping the parties apart. Now, if, in fact, there were an issue of Mr. Kearns' right to paternity or to visitation, he would have a stronger argument on appeal. But he has waived the most important part of his case. He doesn't have a right to continue to force contact upon a former lover. I think we can certainly agree with that. Let's go back to a threshold question that counsel raises, the right to counsel. Correct. Generally, under the law, the right to counsel is considered to be an important right. Usually, if somebody retains counsel, they bring them to the hearing. They have a right to be represented in legal proceedings. So, Sheila, did the trial court sort of gloss over that right and give it short shrift in this case? I don't think so because the appellant waived. It did not. I shouldn't say waived. All right, I will say waived. He waived the most important issue to which he could make a credible due process claim, which would be the right to establish visitation to his child. That is not before us on appeal. His right to counsel would be much stronger if he had done that. But secondly and also equally importantly, he agreed to all of the remedies. The only thing he didn't agree to was the order of protection that would separate himself and his former lover. When you say agreed to the remedies, let me just ask the question maybe a little further than beyond the facts here. If somebody is summoned into court or appears on any order of protection hearing, and the court simply asks them if they agree with all of these remedies, and they say clearly they do, but there's nothing to factual findings or no evidentiary basis to support these remedies in the real world, is that proper? Then we don't have a justiciable issue before the appellate court. In order to show prejudice, he has to show that some right was invaded. And if he's agreed to all of the remedies, he cannot show an invasion of any right. So in order to preserve the right, when he was asked, will you promise, will you agree not to hit her, he'd have to say, no, I won't agree to that? Well, I'm going to say that yes, but of course that would be an absurd response. Well, what choice does he have, in other words? Well, that's a good point, but I don't think that it really defeats the appellee's position, because she has a right not to be forced into contact with him. And that is the purpose of the Domestic Violence Act. Which I think we agree. But this is a more threshold, subtle issue of the right to have the proceedings comport with some fundamental due process here. Correct. And my point is this. There is no fundamental due process right to force your former lover into unwanted contact with you. Well, careful, nobody speaks to that. But if this gentleman, Kearns here, had hired a lawyer two or three days after service, and the lawyer showed up two or three days later, four days later in this trial proceeding, and asked for a continuance, a short continuance to prepare his case, do any of us have any doubt that that would have been granted? Actually, I have a doubt that that would be granted. I do. I believe that the court would have said, no, we need to hear whether there is unwanted contact being forced upon somebody that your client indisputably got into a physical altercation with. If that was going to happen in the meantime, but wasn't there already an interim order of protection? There was, and the issue was whether it should be extended. So the response of the lawyer would have been, Your Honor, we have no objection to continuing the interim order of protection until we have a hearing on the plenary order of protection. At that point, you think the judge would have told the lawyer, I'm sorry, this is going to go forward today. I would be speculating, but I will indulge the court in that assumption. I still don't believe that the appellant has shown a basis for reversing the court's order, because he cannot show palpable injustice. The standard for review on denial of a motion for continuance is a deferential standard. The standard is that the court must be shown to have exercised the manifest abuse of discretion in denying the motion, which we really can't say, given the fact that there was a physical altercation between the parties, and the effect of the order was to keep the parties apart. The appellant was not... But Your Honor, it had more effect than that. I mean, the man's got on his record now an order of protection against him. I mean, it would be quite different if all the order did was say, okay, you guys don't have any contact with each other until this thing is resolved. But with the effect as an order of protection, that's quite different. I mean, you'd be talking, you'd be seeing a difference, too, if she had an order of protection against her. Could have accomplished it by entering an order of protection against her, too, probably. Yes, I can see that. It could have been accomplished that way. But the simple fact of the matter is the parties got into a physical fight at a parking lot, and it was Mr. Kearns who kept insisting on maintaining contact with her. She has every right not to have this person in her life. Counsel, what you're saying also seems to be, as I was asking opposing counsel, the reality is that even if there's some arguable flaws, if you will, in the court's approach, the respondent wasn't prejudiced because there was more than ample evidence to justify the order in the final analysis. Is that sort of what you're saying? Yes. Yes. But the counterargument to that is that the evidence we have now is what it is because he didn't have a lawyer there or time to bring in his own witnesses, his own documents, and develop his own evidence to either counter that. I mean, the evidence, presumably if lawyers are worth anything, the evidence would be different if he had a lawyer. I believe that he did not effectively dispute before the trial court that there was a physical altercation in which he was involved. His position was at trial, it wasn't my fault. You know, I was perhaps acting in soft defense. But that's absurd because if there's a physical altercation, he shouldn't be having contact with her, regardless of whose fault that altercation was or who started it. She's the one who wants to cut off contact between the parties so that we don't have any more volatile situations which might escalate into even more serious violence. Counsel, was there also what I would call objective evidence of the harassment? I mean, there were emails, whether or not there were phone calls, there were flowers. This wasn't the figment of anyone's imagination, was it? No, it was not, Your Honor. And I don't believe that at trial, Mr. Cairns tried to argue that he did not, in fact, put flowers by her garage door, that he did not, in fact, make a telephone call. He just tries to downplay the characterization of those contacts. All right, well, so what was the evidence, then? Let's talk about that. Tell me again. So he leaves flowers with a note at her door? Yes. Yes, Mr. Justice. On one occasion? One occasion. All right. And I know this follows the altercation effect, then? Correct. And he sends emails? How many emails? I don't know the exact number. It is not a matter of record. It's not a matter of record. That he sends him emails and that he leaves how many phone messages? We know of at least one on the day of the altercation. So after the altercation, he leaves a message. Counsel, for him, characterizes him leaving a voicemail saying, bad day, rough day, something like that, maybe we can get together. Correct. And then he leaves a couple of, we don't know how many emails. We don't. And one time in his office? Correct. Anything else? Well, that was enough to Nancy, the appellee on this appeal. She didn't want contact with him. And who would want contact? If I were a woman, I would not want any contact with any man in which I was involved with a physical altercation because that would be an extremely dangerous, a potentially dangerous situation to me. How did he characterize his physical altercation? How did he try to justify it? My understanding of the record and from reading the appellant's brief is that it's sort of a quasi self-defense argument. In other words, she started punching and kicking me, so I started punching and kicking back. However, it's undisputed that over her objection, he attempted physical romantic contact with her, and she was rebuffing that contact. And even if she did punch and kick him, a man cannot punch and kick a woman back. I mean, if a woman does that to a man, he has to step away because he's so much stronger than her. I completely agree. Where does his version of it come from? He didn't testify, right? He did not testify correct, but he had an opportunity to testify and chose not to do so. No, I'm just wondering, where did his version of it come from? Well, from my reading of the appellant's brief and from her interpretation of the facts. Because he makes that argument in his brief that, in fact, that the fight was more of a mutual exchange. Well, he makes that, I thought, in her testimony, which, as the counsel pointed out, contradicts her complaint. Her complaint says that he started the fight. Her testimony during the hearing was different, that they had mutual exchange of striking each other. That gets back to my original point. This is a very weak record on which the appellant chooses to appeal. He concedes away his strongest position, which is right to contact with the child. He doesn't want to pursue that. He's agreed to virtually all the remedies, and then he chooses not to testify. And let's talk about counsel's allegation, or argument, I should say, characterization of his testimony as confused. Another reasonable reading of that testimony is he's being evasive. He's playing passive-aggressive games at the court. He will not answer a direct question. And the trial court is in the best position to determine the demeanor, to judge the credibility of the parties. We don't have Mr. Cairns here, or a tape of him, answering those questions. The trial court was well within its rights to see him as being evasive. Thank you. Thank you for your argument. Rebuttal, then, for the respondent, please. One factual thing I'd like to note, Your Honor, was that the e-mails that Ms. Moy provided... Speak up, please. One factual thing I'd like to discuss is that the e-mails that were provided to the court as evidence all occurred prior to the incident on July 23rd. They were e-mails from the previous months, two months. Having said that, we also should note that from September 1st to September 7th, there had been issued an emergency order petition, ex parte, and there was no contact, nothing. No calls, no texts, no e-mails, no nothing. He unintentionally obeyed this order. Okay, and showing e-mails from... Okay, again, her characterization of them was they seem nice, but they're harassing to me. Now... I would suggest, as counsel said, that Mr. Cairns did not effectively dispute some things. He didn't cross-examine her. He didn't put on any testimony. He lamented that he hadn't had any witness presence. And I think the best thing that this court could do is to remand for a new trial. That's all he's asking. Also, I would point out, too, that Section 214D requires... This is a subtle argument, but that the court examine the balance of hardships for the stay-away order. Now, that stay-away order is something that's kind of interesting here because even though he doesn't have any legal right to visitation under the Domestic Violence Act because he hadn't acknowledged paternity formally, still, the stay order is quite onerous. He can't send his kid a Christmas card, for instance. And this court, again, never examined the evidence that would discuss the balance of hardships as to that order. There wasn't... I guess what I'm asking, Your Honor, is that this record, if it's weak, should be bolstered by sending it back for a new trial. Thank you. All right, thank you both for your arguments. We're going to be taking our advisement. This is an issue of due course.